UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

JOSE ENRIQUE GARCIA DAVALOS,

              Defendant.

------------------------------------X

99 Cr. 1250-01 (RWS)

<u>SENTENCING OPINION</u>



**Sweet, D.J.**

On April 17, 2008, Jose Enrique Garcia Davalos ("Davalos" or "Defendant") appeared before the Honorable Debra C. Freeman in the Southern District of New York and pled guilty to one count of forging the signature of a judge, register, or other officer of a court of the United States, and knowingly concurring in using a forged and counterfeited signature, for the purpose of authenticating a proceeding or document, in violation of 18 U.S.C. § 505. For the reasons set forth below, Davalos will be sentenced to 15 months imprisonment and 3 years supervised release. Davalos also will be required to pay a special assessment of $100.

**<u>Prior Proceedings</u>**

Indictment 99 Cr. 1250 (RWS) was unsealed in the Southern District of New York on October 17, 2008. Count I charges that in September 1999, in the Southern District of New York, Davalos unlawfully, willfully and knowingly forged the signature of a judge, register, and other officer of a court of the United States and a Territory thereof, and knowingly concurred in using a forged and counterfeited signature, for the purpose of authenticating a proceeding and document, in violation of 18 U.S.C. § 505.

On April 17, 2008, Davalos appeared before the Honorable Debra C. Freeman in the Southern District of New York and pled guilty to Count I in accordance with a plea agreement.

Sentencing is scheduled for October 23, 2008.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by

2

the United States Sentencing Commission. As the Supreme Court explained in Gall v. United States, 128 S.Ct. 586 (2007):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

Id. at 596 (internal citation and footnote omitted). Thus, in addition to analysis of the Guidelines, the sentence imposed here results from consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 128 S. Ct 558, 571 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

4

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

From December 3, 1998, through October 16, 1999, Davalos and members of his family resided at the Gracie Inn, located at 502 East 81st Street, New York, NY. At various times throughout this period, Davalos agreed to pay the Gracie Inn between $199 and $359, plus tax, per night for a hotel room.

On about April 15, 1999, Davalos began to fall behind in his payments to the Gracie Inn for the hotel room as well as other hotel services.

In late August 1999, in an effort to convince the Gracie Inn to allow him to continue residing there despite his past due bill, Davalos falsely informed an employee of the Gracie Inn that, while he had not been able to pay his bill in the past because his funds had been frozen in a civil lawsuit, a court had

5

now issued an order releasing his funds so that he would now be able to pay the outstanding balance he owed to the Gracie Inn.

In September 1999, as evidence of the statements described above, Davalos presented a "Notice of Final Order of Execution," (the "District Court Order"), dated August 31, 1999, to an employee of the Gracie Inn as proof that he would be able to pay the Gracie Inn $100,000, and that the Gracie Inn should allow him to remain in the hotel. The District Court Order purported to be signed by the Honorable Robert P. Patterson, United States District Judge, Southern District of New York, when, in fact, the signature of Judge Patterson on the District Court Order was a forgery. It also purported to show that a final judgment had been issued in favor of Davalos in a civil case before Judge Patterson when, in fact, there was no such civil case, let alone any such court order.

As a result of this fraud, Davalos was able to avoid paying the Gracie Inn $77,902.75 in charges it was owed.

From October 20, 2002, through March 17, 2006, Davalos and members of his family resided at The Phillips Club, located at 155 West 66th Street, New York, NY. Throughout this period, Davalos agreed to pay The Phillips Club $310, plus tax, per night

for a hotel room.

In about 2003, Davalos began to fall behind in his payments to The Phillips Club for the hotel room as well as other hotel services.

In about December 2003, in an effort to convince The Phillips Club to allow him to continue residing there despite his past due bill, Davalos falsely informed an employee of The Phillips Club that, while he had not been able to pay his bill in the past because his funds had been frozen in a civil lawsuit, the United States Court of Appeals for the Second Circuit had issued an order releasing his funds so that he would now be able to pay the outstanding balance he owed to The Phillips Club.

Between about December 2003 and December 2005, Davalos faxed or caused to be faxed to The Phillips Club dozens of fraudulent documents (including purported bank statements and letters from the bank officers) as proof that he would be able to pay his outstanding debt, and that The Phillips Club should allow him to remain in the hotel. Among other things, Davalos faxed or caused to be faxed to The Phillips Club thirteen separate documents purporting to be orders or legal notices (the "Second Circuit Orders") issued by the United States Court of Appeals for

the Second Circuit. Each Second Circuit Order purported to be signed by a United States Court of Appeals Judge for the Second Circuit when, in fact, the signature of each judge was a forgery.

The Second Circuit Orders faxed or cause to be faxed by the Defendant to an employee of The Phillips Club included purported orders signed by the Honorable Ralph K. Winter, the Honorable Thomas J. Meskill, the Honorable Fred L. Parker, the Honorable Sonia Sotomayor, the Honorable Wilfred Feinberg, and the Honorable John M. Walker, Jr.

As a result of this fraud, Davalos was able to avoid paying The Phillips Club $350,081.28 in charges it was owed.

**The Relevant Statutory Provisions**

The statutory maximum term of imprisonment for a violation of 18 U.S.C. § 505 is 5 years. Count I therefore constitutes a Class D felony, pursuant to 18 U.S.C. § 3559(a)(4). There is no applicable statutory minimum sentence.

The Court may also impose a term of supervised release of up to three years, pursuant to 18 U.S.C. § 3583(b)(2).

The maximum fine is $250,000 or twice the pecuniary loss that resulted from the offense, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Davalos is eligible for not less than one and no more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the conditions outlined in 18 U.S.C. § 3563(b) must be imposed as a condition of probation, pursuant to 18 U.S.C. § 3563(a)(2).

Full restitution to the victims is required under 18 U.S.C. § 3663A.

**The Guidelines**

Davalos' plea agreement stipulates the following:

- The parties agree that, pursuant to the U.S.S.G. §1B1.11(b)(1), the Sentencing Guidelines in effect as of November 1, 1998, apply in this case.

- The applicable sentencing guideline to the offense charged in Count 1 is U.S.S.G. §2F1.1. Pursuant to §2F1.1(a), the base offense level is six.

- Pursuant to U.S.S.G. §2F1.1(b)(1)(J), because the loss amount exceeds $350,000 but is less than $500,000, Defendant's offense level is increased by nine levels.

- Although it is not charged in Count 1 of the

9

Indictment, the Defendant's use of documents containing the forged signatures of United States Court of Appeals Judges to avoid making payments to The Phillips Club Hotel from December 2003 through December 2005 constitutes relevant conduct for sentencing. See U.S.S.G. §1B3(a)(2).

- Pursuant to U.S.S.G. § 2F1.1(b)(2)(B), because the offense involved a scheme to defraud more than one victim, Defendant's offense level is increased by two levels.

- Assuming Defendant clearly demonstrates acceptance of responsibility to the satisfaction of the Government, a 2-level reduction will be warranted pursuant to U.S.S.G. §3E1.1(a) and a 1-level reduction because Defendant gave timely notice of his intention to enter a plea of guilty. Pursuant to §3E1.1(b).

- The applicable Guideline offense level is therefore 14.

- Based on the information available to the U.S. Attorney's Office, Defendant has zero criminal history points, and his Criminal History Category is therefore I.

- Based on the calculations set forth above, Defendant's stipulated Sentencing Guidelines range is 15 to 21 months. In addition, after determining Defendant's ability to pay, the Court may impose a fine pursuant to §5E1.2. At Guidelines level 14, the applicable fine range is $4,000 to $40,000.

- The parties agree that neither a downward nor an upward departure from the stipulated Guidelines range set forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the Court consider such a departure or adjustment.

- The parties further agree that a sentence within the stipulated Guidelines range would constitute a reasonable sentence in light of all the factors set

forth in 18 U.S.C. § 3553(a).

Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release imposed, pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,076.83 to be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

**The Sentence**

For the instant offenses, Davalos will be sentenced to 15 months' imprisonment and a three-year term of supervised release.

Davalos is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release. It is recommended that Davalos be supervised by the district of his residence.

As mandatory conditions of his supervised release,

Davalose shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; and (3) not possess a firearm or destructive device.

The standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Davalos shall provide the probation officer with access to any requested financial information.
(2) Davalos shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Davalos is in compliance with the installment payment schedule.
(3) Davalos shall cooperate with all inquiries and directives of the Immigration and Customs Enforcement and comply with this country's immigration laws.
(4) Davalos shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The

search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Davalos shall inform any other residents that the premises may be subject to search pursuant to this condition.

The fine in this case is waived. However, Davalos is ordered to make restitution payable to the Clerk, U.S. District Court, for disbursement to the following persons in the following amounts: Gracie Inn: $77,902.75; The Phillips Club: $350,081.28. If Davalos is engaged in a BOP non-UNICOR work program, Davalos shall pay $25 per quarter toward the criminal financial penalties. However, if Davalos participates in the BOP's UNICOR program as a grade 1 through 4, Davalos shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11. Any payment made that is not payment in full shall be divided proportionately among the persons named. In view of Davalos' substantial financial resources, including reported income of $12,000 to $14,000 per month from rental properties in Mexico and additional income from stock, restitution shall be paid in full not later than 12 months from the date of sentence. Davalos shall notify the United States Attorney for this district of any

change of mailing or residence address that occurs while any portion of the restitution remains unpaid. In addition, a special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 23, 2008.

It is so ordered.

**New York, NY**
**October 2✓, 2008**

ROBERT W. SWEET
U.S.D.J.